[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Laura A. Cassavechia, commenced this action against the defendants, Deborah L. Haber and Laidlaw Transit, Inc., for personal injuries and other damages and loses which she allegedly sustained as a result of a collision between her motor vehicle and a bus owned by Laidlaw and operated by Haber, an employee of Laidlaw, acting within the scope of her employment. The collision occurred on May 21, 1998 at or near the intersection of Osborne Street and Balmforth Avenue in the city of Danbury.
In her complaint, the plaintiff alleges that a result of the negligence of the defendants she sustained various personal injuries including cervical and lumbar sprains, neck pain, and other physical and emotional injuries. She further alleged that some of those injuries may be permanent and, as a result, her future activities restricted and her future earning capacity has been impaired.
In their answer to the plaintiff's complaint, the defendants denied any negligence on their part and left the plaintiff to her proof regarding her injuries.
The matter was tried to the court.
At trial, the plaintiff testified that while she was stopped at the said intersection, her vehicle was struck from behind by Laidlaw's bus being operated by Haber. While she had noticed the bus "a ways back" prior to the collision, she did not observe the impact.
When asked, the plaintiff testified that it is possible that the bus had come to a stop at some point prior to the collision, but that she didn't think it had because of the impact of the collision.
The defendant is quoted in the police report as having stated that her foot slipped off the brake pedal and she bumped into the plaintiff's car. (Plaintiff's Ex. 1.) There is no evidence as to whether or not the bus was in motion or stopped at the time the defendant slipped off the petal.
The investigating officer noted in his report that both vehicles "showed very minimal damage." (Plaintiff's Ex. 1.) CT Page 15796
The plaintiff testified that the impact caused her children to scream, caused her to scream, and caused her head to "snap forward." The plaintiff testified that as a result of the collision, she experienced a stabbing pain in the left side of her neck. After being transported to Danbury Hospital by ambulance, the plaintiff was examined, x-rayed and discharged. She could not remember if any medication was prescribed for her when she was discharged.
She also testified that she went back to her job as a postal worker after the weekend — on her next work day, but began to experience pain in the left side of her neck, her left arm and down her back and did not work a full day.
On May 29, 1998, the plaintiff was seen by Dr. Lawrence Schweitzer who noted a slight restriction in range of motion of the cervical spine with some paracervical spasm. The lumbar spine showed some stiffness at the lumbosacral junction with range of motion normal. The plaintiff was referred for physical therapy three times per week for a couple of weeks. A prescription for Flexeril was declined. (Plaintiff's Ex. 2.)
During the following weeks, the plaintiff attended some physical therapy sessions but missed a number as well. Ten days later, the plaintiff was seen by Dr. Schweitzer, and he noted slow but steady progress with her cervical sprain and physical therapy was to continue. He noted plaintiff was taking Flexeril. (Plaintiff's Ex. 2.)
On June 23, 1998, the plaintiff was discharged from Dr. Schweitzer's care and given a return to work slip but it was recommended that she avoid "twisting-type sorting procedures [at work] for the next few weeks. . . ." The plaintiff offered evidence that her return to work was on June 15, 1998. (Plaintiff's Ex. 2.)
The plaintiff did return to work with the U.S. Postal Service on June 15, 1998 but for light duty only. That limitation did not reduce her hourly compensation and she remained so employed until August 24, 2000.
The plaintiff testified about the physical effort required of her to sort and move mail and packages as part of her work duties. She testified that she was unable to lift heavy objects up to seventy-five pounds in weight when she previously had been able to do so.
The plaintiff was seen by Dr. Schweitzer in January, 1999 on her complaint of pain to the left side of her neck. He also noted the "left ulnar distribution shows signs of paresthesias, although I cannot detect any specific motor deficit." (Plaintiff's Ex. 2.) An MRI was performed CT Page 15797 and based on that test the plaintiff was found to have excellent range of motion and no evidence of motor dysfunction. She was considered to have reached maximum medical improvement.
On August 24, 2000, the plaintiff reported that she sustained a neck injury at work and she was thereafter treated by Danbury Orthopedic Associates, P.C. for pain and weakness in her upper right extremity. She made no mention of her previous injury and treatment to the upper left
extremity allegedly caused by the May, 1998 motor vehicle accident which is the subject of this suit. She testified that she intentionally never mentioned it because of the complications which might arise due to the workers' compensation issues related to the August 24, 2000 incident. She subsequently terminated her employment with the U.S. Postal Service and obtained employment as a dental assistant.
The plaintiff offered evidence and testimony that her medical and related expenses from this motor vehicle collision totaled $2,598. The medicals are the result of one hospital visit, three doctor visits and two physical therapy visits.
She also offered evidence and testimony that as a result of the injuries she received she missed a number of days work and consequential loss of $2,026.09 in income.
The plaintiff testified that she continues to have residual pain and discomfort from the injuries she received in the collision and her ability to enjoy life's pleasures has been diminished.
Considerable testimony was related to the actual impact between the two vehicles and the consequential injuries and property damage. On a motion of the plaintiff, the defendants were precluded by the court from offering expert testimony regarding that issue. The plaintiff testified to the force of the collision. The plaintiff's minor son, a back seat passenger, testified about the impact and said that it caused him to hit his head on the seat in front of him. As further evidence of the force of impact, the plaintiff testified that the rear bumper panel on the plaintiff's vehicle was "cracked" and had not been repaired. The investigating police officer made a notation in his report that "[b]oth vehicles were inspected by this officer and both showed very minimal damage." (Plaintiff's Ex. 1.) The court viewed the vehicle in the courthouse parking lot at the request of the defendants. The bumper appeared to be free from cracks or other damage. While it is true that it would be speculative of the trier of the facts to attempt to precisely correlate the degree of personal injury based upon the extent of property damage, the extent of property damage is some indicia when considered with other evidence, of the impact of the vehicles. Such evidence is CT Page 15798 relevant not only as to injuries and damages, but also as to credibility of the evidence and testimony.
Having considered the evidence and testimony regarding the motor vehicle collision, the court finds that the defendant's bus struck the plaintiff's car while the latter was legally stopped on the highway. The court further finds that there is insufficient evidence to establish whether or not the defendants' vehicle had come to a stop behind the plaintiff's car before the impact. The court further finds that as a result of the collision the plaintiff did sustain injury to her neck and back.
The court further finds that the plaintiff has failed to prove by a fair preponderance of the evidence that the accident of May 21, 1998 was the proximate cause of all of the pain and suffering, disability and other losses, both economic and non-economic, including her change in employment, which she has experienced since August 24, 2000, the date of the work-related injury to her right neck and side. The court does find that the plaintiff did sustain personal injuries and losses as a result of the said motor vehicle collision for which she is entitled to fair, just and reasonable compensation.
The court further finds that the plaintiff has failed to prove by a fair preponderance of the evidence that she has suffered any permanent injury as a result of said motor vehicle collision.
For the foregoing reasons, the court finds the following damages on behalf of the plaintiff:
Economic damages — $2,026.08
Non-economic damages — $18,000.00
Total — $20,026.08
Judgment to enter for the plaintiff and against the defendants accordingly.
Doherty, J.